James Malcolm **WILLIAMS**, Appellant,

v.

**MILLWARD & COMPANY, et al., Respondents.**

No. C2–87–234.

Court of Appeals of Minnesota.

Sept. 22, 1987.

Review Denied Nov. 18, 1987.

James R. Martin, Minneapolis, for appellant.

William D. Flaskamp, Minneapolis, for respondents.

Heard, considered and decided by RANDALL, P.J., and SEDGWICK and LANSING, JJ.

### OPINION

SEDGWICK, Judge.

Attorney James Malcolm Williams appeals from a November 12, 1986, judgment entered upon a directed verdict for his client. We affirm.

### FACTS

James E. Millward was assigned an exclusive distributorship, covering several western states, with the Vitamin Products Co. in late 1957. The contracting parties could cancel for cause on 90 days notice and Millward could renew at successive five year intervals.

Millward's attempt to exercise his renewal option in 1964 was rejected and Vitamin Products canceled for cause. Millward retained his distributorship. His later attempts to renew his contract in 1969 and 1974 were unsuccessful.

Millward paid a $5,000 retainer to attorney James Malcolm Williams, for which Williams agreed to sell the distributorship, pursue legal action, or renegotiate the contract. The contract of retainer, signed March 18, 1975, contained various contingent fee provisions based on certain out-

comes and for the rate of $75.00 an hour if representation was prematurely terminated.

Williams was unable to negotiate a new contract or the distributorship's sale. In September 1975, he filed suit on Millward's behalf in federal district court in Wisconsin. Vitamin Products was granted summary judgment on all claims. The Seventh Circuit Court of Appeals affirmed and subsequently denied a petition for rehearing. An appeal to the Supreme Court was not filed at Millward's request.

In 1981, Williams brought suit in Minnesota to recover $20,032.50 plus interest for his efforts on Millward's behalf. Williams claims that Millward terminated the contract in his 1978 letter rejecting an appeal to the Supreme Court and therefore owed him $75.00 an hour fee for services from that date. The trial court directed a verdict for Millward.

### ISSUE

Did the trial court err by granting Millward a directed verdict?

### ANALYSIS

A motion for a directed verdict presents a question of law regarding the sufficiency of the evidence to raise a fact question for the jury's decision. *Midland National Bank v. Perranoski*, 299 N.W.2d 404, 409 (Minn.1980). The trial court must consider the record as a whole and treat as credible the evidence for the adverse party and all reasonable inferences that can be drawn from such evidence. *Id.* A directed verdict is proper only when it would clearly be the trial court's duty to set aside a contrary verdict as manifestly against the evidence or when a verdict would be contrary to the applicable law. *Id.*

Williams' complaint stated as a cause of action only Millward's termination of the contract under paragraph 6. The contract provides in pertinent part as follows,

Said representation to include but not be limited to negotiating a sale of the exclusive territory granted by Vitamin Products Company, Inc. * * *; the commencement of all necessary legal actions to secure all rights of * * * Millward and Company whether at common law, under state or federal statutes. For his services, I will pay the said James Malcolm Williams, individually and on behalf of Millward and Company in accordance with the following schedule:

1) Five Thousand Dollars ($5,000.00) retainer upon the execution of this agreement, the receipt of which is hereby acknowledged. In addition, I will pay monthly upon receipt of appropriate billings all expenses that are necessarily and reasonably incurred in this representation to the said James Malcolm Williams. It being understood that no such expenses will be undertaken without my express approval. In the event of a recovery, the said expenses and retainer will be returned to the said Millward and Company prior to computing the contingent fees * * *. It is understood that in event there is no recovery, no portion of the * * * retainer or expenses will be returned; on the other hand, in the event there is no recovery, there will be no additional fees paid by the said James A. Millward * * * as and for legal fees except and in the event that the representation is terminated as * * * provided in Paragraph 6 below. The services contracted for * * * do not contain fees for any appellate work, if any is required, as part of the * * * representation but does involve the full trial or trials of any matters contained herein.

\* \* \* \* \* \*

6) In the event that the representation * * * is terminated for any other reason before completion as provided in Paragraphs 2, 3, 4 and 5 above or any combination thereof, * * * James E. Millward [and Company] agree to pay * * * Williams Seventy-Five Dollars ($75.00) per hour plus all reasonable and necessary expenses as provided in Paragraph 1 * * * with full credit on this time and expense billing for the ($5,000.00) retainer paid * * *. Said other reasons for termination to include but not be limited to a renegotiation of the * * * contract on such terms and conditions as are ac-

ceptable to [Millward] for continuing representation * * *.

Paragraphs 2, 3, 4 and 5 contain various contingent fee possibilities not applicable here.

Williams claims the following letter, dated August 7, 1978—one year after the summary judgment, and following appellate review—terminated the contract *before completion.*

Millward wrote to Williams:

I received your letter * * * in which you advised me that the Petition for Rehearing was denied [by the Seventh Circuit]. In view of the fact that in my opinion the * * * Supreme Court will as a matter of course deny the Petition for Writ of Certiorari, I see no point in spending more time and money on this matter. I therefore request that such a petition not be filed.

The trial court did not consider the letter as terminating the contract, and apparently believed no reasonable jury could reach a different conclusion. The court also noted that Williams did not bill Millward until February 6, 1981, three and a half years after the trial and two and a half years from the "termination."

Other matters argued by Williams are either not supported by the record or were not preserved by a motion for a new trial. The only issue properly on appeal is whether the 1978 letter prematurely terminated the contract.

The trial court's decision that the 1978 letter could not terminate the contract is consistent with the language of the retainer agreement. "It is a well-established general rule that where the intention of the parties may be gained wholly from the writing, the construction of the contract is for the court." *Donnay v. Boulware,* 275 Minn. 37, 44, 144 N.W.2d 711, 716 (1966). The language of the contract is not ambiguous, and its interpretation remains with the court. *See Lamb Plumbing & Heating Co. v. Kraus-Anderson,* 296 N.W.2d 859, 862 (Minn.1980).

Paragraph 1 provides that the retainer will remain with Williams if there is no recovery. If there is no recovery, Millward is not required to pay any additional fees unless he prematurely terminates Williams as his counsel. "Recovery" refers to any return from the sale of the distributorship or a successful lawsuit. Appellate work is separate, and Williams admits he was paid for the appeal to the Seventh Circuit.

Here, the lawsuit was unsuccessful, there was no recovery, and no additional fees are owed.

## DECISION

The trial court did not err in directing a verdict because appellant failed to prove a prima facie case.

Affirmed.